# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING DIVISION

**BART MICKEY and JAMI MICKEY,**
**individually, and together as Husband and**
**Wife,**

     **Plaintiffs,**

v.

**EQT PRODUCTION COMPANY,**

     **Defendant.**

> ELECTRONICALLY
> FILED
> 2/27/2025
> U.S. DISTRICT COURT
> Northern District of WV

Civil Action No. 5:25-cv-41 Bailey
(Removal from Marshall County Circuit Court, Civil Action No. 25-C-14)

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant EQT Production Company ("EQT Production") files this Notice of Removal, removing the case captioned *Bart Mickey and Jami Mickey, individually, and together as Husband and Wife v. EQT Production Company,* Civil Action No. 25-C-14 (the "State Court Action"), from the Circuit Court of Marshall County, West Virginia, to the United States District Court for the Northern District of West Virginia, Wheeling Division. In support of this Notice of Removal, EQT Production states as follows:

## BACKGROUND

1. On January 23, 2025, Plaintiffs Bart Mickey and Jami Mickey (together, "Plaintiffs") filed a Summons and Complaint in the Circuit Court of Marshall County, West Virginia.

2. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Marshall County West Virginia docket for this matter and copies of all pleadings served to date are attached to this Notice of Removal as **Exhibit 1**.

3. Service was effected on January 28, 2025, via Certified Mail to EQT Production's

principal office address.

4. EQT Production has not filed a responsive pleading in the Circuit Court of Marshall County, West Virginia.

5. Pursuant to 28 U.S.C. § 1441(a), removal of an action originally filed in state court is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *See* § 28 U.S.C. 1441(a).

6. 28 U.S.C. § 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *See* 28 U.S.C. § 1332(a).

7. As set forth below, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, in value, and because the case arises between citizens of different states, this matter lies within the original subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a).

8. In removing this matter to this Court, the EQT Production does not intend to waive any defenses it has to the action, including but not limited to, personal jurisdiction and venue.

***Diversity of Citizenship***

9. Based upon the information available to EQT Production, there is complete diversity between Plaintiffs and EQT Production.

10. Plaintiffs are citizens of West Virginia. *See* Compl. ¶¶ 2, 3.

11. For purposes of diversity jurisdiction, citizenship of a corporation is determined by the location of its "principal place of business." 28 U.S.C. § 1332(c)(1). The "principal place of business" under 1332(c)(1) is "where a corporation's officers directed, controlled, and coordinated

the corporation's activities, a 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). "The 'nerve center' will typically be found at a corporation's headquarters." *Id*. at 81.

12. EQT Production is a Pennsylvania corporation with its principal office address in Pittsburgh, Pennsylvania. *See* Documents from West Virginia Secretary of State's Office, attached as **Exhibit 2**. EQT Production represents that its center of direction, control, and coordination is in its principal office in Pittsburgh, Pennsylvania.

13. Because Plaintiffs are citizens of West Virginia, and EQT Production is a citizen of Pennsylvania, complete diversity exists as between the Plaintiffs and EQT Production in this matter, placing this action within the original jurisdiction of the district court. *See* 28 U.S.C. § 1332(a).

*Amount in Controversy*

14. "[T]he amount in controversy is what the plaintiff claims to be entitled to or demands." *See Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 967 (S.D. W.Va. 2011). If not specified in the complaint, the amount in controversy must be determined on the likely monetary relief that may be granted to a plaintiff if he succeeds on all of his claims asserted in good faith. *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 936–37 (S.D. W. Va. 1996); *McGraw v. Discover Fin. Servs., Inc.,* No. CIV.A.2:05 0215, 2005 WL 1785259 at *3 (S.D. W. Va. 2005). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 181 (1936) (noting the "principle that jurisdiction is to be tested by the value of the object or right to be protected against interference"). In making the assessment of the value of the object of the litigation, the Fourth Circuit employs the "either viewpoint" rule—that is, the value

3

to either the plaintiff or the defendant. *See Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) ("the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'") (quoting *Government Employees Ins. Co. v. Lally*, 327 F. 2d 568, 569 (4th Cir. 1964)); *see also McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 493 (S.D. W. Va. 2001) (applying the either viewpoint rule).

15. The Plaintiffs assert five tort claims—Count I: Fraudulent Nondisclosure; Count II: Aiding and Abetting Fraud, Count IV: Fraudulent Inducement; and Count V: Constructive Fraud—against EQT Production related to Plaintiffs' decision to purchase property located in Marshall County, West Virginia (the "Subject Property") from Perry and Imogene Keaton (the "Keatons").

16. As alleged in the Complaint, on April 15, 2015, Trans Energy, Inc. ("Trans Energy") entered into a Consent Decree with the United States Environmental Protection Agency and the West Virginia Department of Environmental Protection (the "Trans Energy Consent Decree") requiring Trans Energy to perform restoration and mitigation activities at various locations in Marshall, Wetzel, and Marion Counties, West Virginia, including the Subject Property. Compl. ¶¶18–26. Plaintiffs allege that the Keatons ownership of the Subject Property began prior to the entry of the Trans Energy Consent Decree. *See id.* ¶19. Plaintiffs allege that, at some point, EQT Production "purchased certain assets from Trans Energy" and "assumed the obligations of Trans Energy under the Consent Decree." *Id.* ¶27. Plaintiffs allege that, on July 23, 2020, EQT Production and the Keatons entered into a Surface Access and Use Agreement (the "Surface Agreement") which expressly authorized EQT Production to remove a pond located on the Subject Property, among other remediation activities. *Id.* ¶29–35. Plaintiffs allege that the terms of the Surface Agreement require the Keatons, as then-owners of the Subject Property to "'make any potential buyer aware of the existence and contents of this Agreement and of its

binding nature' 'prior to the sale or transfer'" of the Subject Property. *Id.* ¶38 (quoting the "Surface Access and Use Agreement," attached as Ex. D to Compl, at Section 4(d)).

17. Plaintiffs further allege that, on or about January 25, 2023, they entered into a contract to purchase the Subject Property from the Keatons for $350,000. *Id.* ¶¶ 9–16. Plaintiffs allege that, at that time, they did not know EQT Production had an ongoing relationship with the Subject Property. *Id.* ¶17. Plaintiffs allege that, on or about February 7, 2023, prior to closing, they received an initial title search from a third-party contractor. *Id.* ¶41. Plaintiffs allege that the initial title search did not discover or mention the Surface Agreement. *Id.* ¶43. Plaintiffs allege that EQT Production recorded the executed Surface Agreement with the Marshall County Clerk's Office two weeks later, on February 24, 2023. *See id.* ¶¶39, 45. Plaintiffs allege that they finalized the sale and took title to the Subject Property on April 18, 2023. *Id.* ¶46. Plaintiffs allege that, at that time, they were not aware of the Surface Agreement. *Id.* ¶48. Plaintiffs allege that, in or around July 2023, EQT Production began operations on the Subject Property consistent with the 2020 Surface Agreement, including actions to remove the pond located on the Subject Property. *See id.* ¶¶53–56.

18. In their Complaint, Plaintiffs ask the Court to enter an Order granting judgment in their favor and against EQT Production Company in an amount to be proven at trial plus attorneys' fees, interest, punitive damages, and any other appropriate relief. *See* Compl. at 9–12 and 14. "[W]hen the complaint does not specifically state the amount in controversy, the removing defendant must prove, by a preponderance of the evidence, that it exceeds $75,000.00; in other words, the defendant need only show it is more likely than not that the amount-in-controversy requirement is met." *Michael v. McElroy Coal Co.*, No. 5:13-CV-95, 2013 WL 12137307, at *1 (N.D.W. Va. Sept. 12, 2013) (Bailey, J.) (amount in controversy exceeded where plaintiffs alleged

5

that defendants' mining activities caused damage to plaintiffs' property, substantial interference with plaintiffs' use and enjoyment in their property, and permanent reduction in the value of plaintiffs' property).

19. While Plaintiffs do not quantify their purported damages in the Complaint, they request "compensatory damages for the difference between the purchase price of the property and its actual value." Compl. ¶¶80–81. As alleged in the Complaint, Plaintiffs purchased the property for $350,000. Plaintiffs assert that EQT Production's ongoing relationship with the Subject Property "greatly diminishes the personal and financial value of this property." *Id.* ¶17. They claim that EQT Production's activities, in particular the removal of a pond located on the Subject Property, have "had a severe negative impact" and caused "[t]he vast majority of the property [to] become inaccessible[.]" *Id.* ¶¶55–56. They further assert that EQT's actions have caused a substantial interference with Plaintiffs' use and enjoyment of the Subject Property. *See* Compl. ¶89. Thus, based on Plaintiffs' own allegations, it is reasonable to believe that they are claiming more than $75,000 in compensatory damages alone.

20. Because Plaintiffs' complaint asserts tort claims, both compensatory and punitive damages are in controversy. The West Virginia punitive damages statute provides for punitive damages awards "not to exceed *the greater of* four times the amount of compensatory damages or $500,000, whichever is greater." W. Va. Code § 55-7-29 (emphasis added). Accordingly, pursuant to W. Va. Code § 55-7-29, Plaintiffs could seek up to $500,000 in punitive damages, again placing the amount in controversy well above the $75,000 threshold. Even if Plaintiffs cannot claim the maximum statutory amount of punitive damages, they would only need to recover $15,000 in compensatory damages, to be eligible for punitive damages in excess of the $75,000 threshold.

21. Plaintiffs also seek an unspecified amount of attorney fees, expenses, and costs

incurred in prosecuting their claims. Again, while Plaintiffs do not specify the amount of attorney fees, expenses, and costs that they seek, any amount of additional damages attributable to attorney fees would cause the amount in controversy to further exceed the statutory minimum needed for removal. *See e.g., McGraw v. Discover Fin. Servs., Inc.,* No. CIV.A.2:05 0215, 2005 WL 1785259, at *6 (S.D.W. Va. July 26, 2005) (holding $25,000 was a reasonable estimate for attorney fees for purposes of calculating amount in controversy).

22.     Based on the above, EQT Production has met its burden of establishing, by a preponderance of the evidence, that the amount in controversy threshold of $75,000 is exceeded in this action.

*Removal Procedure*

23.     Removal of the above-captioned matter is timely under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a) because this Notice of Removal is filed within thirty (30) days of receipt of the Summons and Complaint by EQT Production.

24.     Removal is properly made to the United States District Court for the Northern District of West Virginia, Wheeling Division, under 28 U.S.C. § 1441(a), because Marshall County, where the State Court Action is pending, is within the Northern District of West Virginia, Wheeling Division. *See* 28 U.S.C. § 129(a).

25.     EQT Production will file written notice of the filing of this Notice of Removal with the Clerk of the Circuit Court of Marshall County, West Virginia concurrently with the filing of this Notice and Removal and will serve the same on Plaintiffs pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, by this Notice of Removal, EQT Production removes this action from the Circuit Court of Marshall County, West Virginia, and requests that this action proceed as properly removed to this Court.

**EQT PRODUCTION COMPANY,**
**By Counsel**

*/s/ Jennifer J. Hicks*
Jennifer J. Hicks, Esquire (WVSB #11423)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
681-205-8888
681-205-8814 (fax)
jhicks@babstcalland.com

and

Mark K. Dausch, Esquire (WVSB #11655)
Babst, Calland, Clements & Zomnir, P.C.
603 Stanwix Street, 6th Floor
Pittsburgh, PA 15222
412-394-5400
412-394-6576 (fax)
mdausch@babstcalland.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING DIVISION

**BART MICKEY and JAMI MICKEY,**
individually, and together as Husband and
Wife,

       **Plaintiffs,**

v.

       Civil Action No. 5:25-cv-41 Bailey
       (Removal from Marshall County Circuit
       Court, Civil Action No. 25-C-14)

**EQT PRODUCTION COMPANY,**

       **Defendant.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Notice of Removal* was electronically filed February 27, 2025, via the Court's CM/ECF system, which will send notification of the electronic filing to the following counsel of record:

Kerri C. Sturm, Esquire
Bernstein-Burkley, P.C.
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
*Counsel for Plaintiffs*

       */s/ Jennifer J. Hicks*
       Jennifer J. Hicks, Esquire (WVSB #11423)